# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:17-cv-641-MOC
# (3:15-cr-40-MOC-DSC-1)

| | |
|---|---|
| GREGORY GARCIA, | ) |
| Petitioner, | ) |
| vs. | ) ORDER |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

## I. BACKGROUND

Petitioner was indicted in the underlying criminal case for: Count (1), attempting to procure United States naturalization through false and misleading statements about his criminal history during the application process to become a United States citizen; and Count (2) procuring United States naturalization through false and misleading statements about his criminal history during the application process to become a United States citizen. (3:15-cr-40, Doc. No. 1).

The evidence at trial showed the following:

Garcia immigrated to the United States in 1993 and became a lawful permanent resident. In early 2005, he filed an application to become a naturalized citizen. The naturalization process required Garcia to submit a standardized application form ("Form N-400"), appear in person for questioning, and pass tests designed to elicit his knowledge of U.S. history and government, as well as written and spoken English.

On May 31, 2006, Garcia appeared for an in-person meeting with USCIS Officer Jason Rucienski. During the meeting, Officer Rucienski tested Garcia on his civics and English knowledge, and reviewed Garcia's criminal history. Garcia passed the civics examination, but failed the language test. Officer Rucienski provided Garcia with an "interview results" form, explaining that Garcia had failed the language test and would have a second chance to take it. He also informed Garcia that he needed to bring a certified record concerning an incident in his criminal history to the next meeting.

On August 23, 2006, a federal grand jury indicted Garcia on charges related to a conspiracy involving credit-card and identity fraud. Authorities arrested Garcia on September 15, 2006, and he made his initial appearance in federal court that day. He later pleaded guilty to two of the charges. Slightly more than a month after Garcia's arrest, USCIS sent Garcia a notice scheduling him to appear on November 9, 2006, for a "Re-Examination for Reading, Writing, or Speaking English," and "Naturalization Re-Interview."

On November 9, 2006, Garcia appeared for a meeting with USCIS Officer Kevin Winn. Officer Winn retested Garcia on his English skills, and Garcia passed. Officer Winn also reviewed with Garcia his Form N-400. Questions 16 and 17 asked whether Garcia had ever been "arrested, cited, or detained by any law enforcement officer" or "charged with committing any crime." Garcia listed two criminal incidents in New Jersey from the late 1990s, but he did not disclose the federal charges for which he had been indicted and arrested several months earlier. Question 23 asked whether Garcia had ever given false or misleading information to any U.S. official while applying for any immigration benefit, and Garcia checked the box designated as no. Garcia then signed Form N-400, certifying under penalty of perjury that the contents of the form were true and correct. Officer Winn recommended Garcia's application for approval.

USCIS approved Garcia's application in July 2007 and scheduled him to appear for a naturalization oath ceremony on August 14, 2007. The ceremony notice included Form N-445, asking whether Garcia had been, inter alia, cited, arrested, indicted, or convicted of any crime "AFTER the date you were first interviewed." Although Garcia checked yes, he told USCIS Officer Edna Falls at the oath ceremony that his only intervening offense was a speeding violation, which Officer Falls noted on the form. Garcia never disclosed his August 2006 indictment or September 2006 arrest on federal charges. Garcia signed Form N-445 on August 14, 2007, certifying that it was true and correct. He became a naturalized citizen that day.

United States v. Garcia, 855 F.3d 615, 615-18 (4th Cir. 2017) (citations omitted).

Officer Winn testified at trial that, during the re-interview on November 9, 2006, Petitioner did not ever mention that he had pending federal charges. (3:15-cr-40, Doc. No. 45 at 200).

2

Officer Falls testified that her job entailed making decisions on applications regarding naturalization and permanent residency. (3:15-cr-40, Doc. No. 45 at 203). She would re-verify other officers' work and approve applications if they met the naturalization guidelines. (3:15-cr-40, Doc. No. 45 at 204-05). On August 14, 2007, she questioned Petitioner about the naturalization application immediately prior to the naturalization ceremony. With regards to question number three of form N-445, Falls wrote "speeding only" pursuant to Petitioner's response. (Id.). Petitioner did not mention to Falls that he had pled guilty to federal criminal charges and, "**[i]f he had told me that**, **I would have pulled his application and we would have had to request papers for that crime. That would be a crime that would disqualify him**." (3:15-cr-40, Doc. No. 45 at 208) (emphasis added).

The Government proposed jury instructions including the following elements: (1) defendant made false and misleading statements during the application process to become a United States citizen; (2) defendant made the statements knowingly; (3) the statements were contrary to the law; (4) defendant procured or attempted to procure naturalization and United States citizenship. (3:15-cr-40, Doc. No. 18 at 27) (citing United States v. Sadig, 271 Fed. Appx. 290, 295–96 (4th Cir. 2007)).

Petitioner's proposed jury instructions regarding the elements of the offense include a materiality requirement as follows: (1) the defendant procured or attempted to procure his naturalization and US citizenship contrary to the law; (2) defendant made false and misleading statements about his criminal history during the application process to become a US citizen; (3) "that statements related to some material matter;" (4) defendant knew his statements were false and misleading. (3:15-cr-40, Doc. No. 19 at 17) (citing United States v. Lachtin, 554 F.3d 709 (7th Cir. 2009)).

The Court overruled Petitioner's request for a materiality instruction. (3:15-cr-40, Doc. No. 46 at 17-18). It instructed the jury on the following elements: (1) "that the defendant procured or attempted to procure naturalization and United States citizenship;" (2) "that the defendant made false and misleading statements during the application process to become a United States citizen….;" (3) "that the defendant made the statements knowingly;" and (4) "that the statements were contrary to the law." (3:15-cr-40, Doc. No. 46 at 129). The Court defined "knowingly" to mean that "the defendant was conscious or aware of his actions, realized what he was doing or what was happening around him, and did not act out of ignorance, mistake or accident." (3:15-cr-40, Doc. No. 46 at 130). The Court defined "procure" to mean "obtaining citizenship as a result of the application process." (3:15-cr-40, Doc. No. 46 at 131-32). The Court further instructed that, "if you find from the evidence beyond a reasonable doubt that the defendant … knowingly attempted to procure, contrary to the law, his naturalization and United States citizenship, that is, he made false and misleading statements about his criminal history during the application process to become a United States citizen, it would be your duty to return a verdict of guilty as charged." (<u>Id.</u>).

The jury found Petitioner guilty of both counts. The Court adjudicated him guilty and sentenced him to two years of probation for each count, concurrent. (3:15-cr-40, Doc. No. 74).

Petitioner argued on direct appeal that the Court erred by (1) denying his motions for judgment of acquittal and a new trial; and (2) taking judicial notice of an immigration website excerpt. The Fourth Circuit Court of Appeals affirmed. <u>United States v. Garcia</u>, 855 F.3d 615 (4th Cir. 2017). This Court subsequently entered an Order Revoking Citizenship on the Government's motion, (Doc. No. 89), and the Fourth Circuit affirmed. <u>United States v. Garcia</u>, 2018 WL 3060122 (4th Cir. June 20, 2018).

Meanwhile, Petitioner filed the instant § 2255 Motion to Vacate through counsel on October 1, 2017, arguing (renumbered): (1) trial counsel was ineffective for failing to adequately research and present favorable case law to the Court when requesting a jury instruction on materiality of the false or misleading statement in his application to become a naturalized citizen; and (2) appellate counsel was ineffective for failing to appeal the Court's denial of the defense jury instruction on materiality. The Government has filed a Response arguing that counsel was not deficient for failing to present non-binding Fourth Circuit case law regarding materiality because counsel presented a Seventh Circuit published opinion with the same holding, and that any jury instruction error was harmless so Petitioner cannot demonstrate prejudice at either the trial or appellate level.

**II.     SECTION 2255 STANDARD OF REVIEW**

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within

the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), *vacated on other grounds*, 218 F.3d 310 (4th Cir. 2000).

When reviewing trial counsel's failure to request a jury instruction, the inquiry is twofold: (1) whether the instruction, if requested, should have been given; and (2) if the instruction had been given, was there a reasonable probability that the outcome of the proceedings would have been different." Hope v. Cartledge, 857 F.3d 518, 523 (4th Cir. 2017).

Strickland also applies in the context of appellate representation. To show prejudice in such cases, a petitioner must show a "reasonable probability ... he would have prevailed on his appeal" but for his counsel's unreasonable failure to raise an issue. Smith v. Robbins, 528 U.S. 259, 285–

6

86 (2000); see also United States v. Mannino, 212 F.3d 835, 845–46 (3d Cir. 2000) ("The test for prejudice under Strickland is not whether petitioners would likely prevail upon remand, but whether we would have likely reversed and ordered a remand had the issue been raised on direct appeal.").

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

**(1) Ineffective Assistance of Trial Counsel**

Petitioner contends that trial counsel was ineffective for failing to cite two Fourth Circuit opinions in support of the request for a jury instruction on materiality, United States v. Aledekoba, 61 Fed. Appx. 27 (4th Cir. 2003), and United States v. Agunbiade, 172 F.3d 864 (4th Cir. 1999) (unpublished). He asserts that, had counsel cited those cases, the Court probably would have granted the materiality instruction. He further argues that there is a reasonable probability of a different outcome but for counsel's deficiency because the Government did not call a witness to testify about the effect of Petitioner's false statements on procuring his naturalization or how the outcome of the naturalization process would have been different had he made factual statements instead.

Petitioner was charged with two counts violating 18 U.S.C. § 1425(a), which makes it illegal to "knowingly procure[] or attempt[] to procure, contrary to law, the naturalization of any

person, or documentary or other evidence of naturalization of citizenship…." At the time of Petitioner's trial, there was a circuit split with regards to whether materiality is an element of that offense.[1]

Defense counsel relied on a published Seventh Circuit opinion to support the request for an instruction on materiality. In United States v. Lachtin, 554 F.3d 709 (7th Cir. 2009), the Seventh Circuit found that the jury instructions were sufficient because they adequately addressed the four elements, that (1) the naturalized citizen must have misrepresented or concealed some fact; (2) the misrepresentation or concealment was willful; (3) the fact must have been material; and (4) the naturalized citizen must have procured citizenship as a result of the misrepresentation or concealment. That court concluded that the Government proved a material misrepresentation through an immigration agent's testimony that, had defendant been forthcoming with his affiliation with the Iraqi Intelligence Service, she would have investigated the matter further and passed it along to her supervisor.

Petitioner fails to explain why the Court would have granted the materiality instruction had counsel additionally cited two unpublished Fourth Circuit cases. The cases at issue, Aladekoba and Agunbiade, are both unpublished sufficiency of the evidence cases that rely on Ninth Circuit case law. See United States v. Puerta, 982 F.3d 1297 (9th Cir. 1992). Citation to these pre-2007 unpublished cases is disfavored and they are not binding precedent. See King v. Blankenship, 636 F.2d 70, 72 (4th Cir. 1980) (unpublished opinions do not constitute binding precedent); Kirby v. Blackledge, 530 F.2d 583 (4th Cir. 1976) (memorandum decisions of the circuit are not to be treated

---

[1] On June 22, 2017, the Supreme Court resolved the circuit split in Maslenjak v. United States, 137 S.Ct. 1918 (2017), and held that § 1425(a) does have a materiality requirement. Petitioner does not suggest that counsel was ineffective for failing to anticipate Maslenjak.

8

as precedent within the meaning of the rule of stare decisis); Chorley Enterprises, Inc. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 562 n.10 (4th Cir. 2015) (noting that unpublished opinions are not binding on the circuit court); see also Fourth Circuit Local Rule 32.1 ("Citation of this Court's unpublished dispositions issued prior to January 1, 2007, … in this Court and in the district courts within this Circuit is disfavored…. If a party believes, nevertheless, that an unpublished disposition of this Court issued prior to January 1, 2007, has precedential value in relation to a material issue in a case and that there is no published opinion that would serve as well, such disposition may be cited…."); Fed. R. App. P. 32.1(a) ("[a] court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as 'unpublished,' … and; (ii) issued on or after January 1, 2007."). Reasonable counsel in Petitioner's case could have concluded that citing a published Seventh Circuit opinion, which is persuasive authority, would have adequately supported the argument in favor of a materiality jury instruction. See generally United States v. Herrera-Gonzalez, 2007 WL 2348668 (4th Cir. Aug. 15, 2007) (citing circuit cases as persuasive authority); United States v. Martin, 47 Fed. Appx. 218 (4th Cir. 2002) (same).

Even if counsel can be deemed deficient for failing to cite the unpublished Fourth Circuit cases, this claim still fails because Petitioner has not demonstrated prejudice. Had counsel cited Aladekoba and Agunbiade, the Court would not have been compelled to grant the materiality instruction because they are non-binding unpublished cases. Moreover, the record demonstrates that the jury would not have reached a different verdict had it been instructed on materiality. Officer Falls testified that, if Petitioner had mentioned that he had pled guilty to federal criminal charges she "would have pulled his application and we would have had to request papers for that crime. That would be a crime that would disqualify him." (3:15-cr-40, Doc. No. 45 at 208). The

Court instructed the jury that, for a guilty verdict, it had to find that Petitioner knowingly made misrepresentations about his "criminal history" to procure or attempt to procure citizenship. (3:15-cr-40, Doc. No. 46 at 131-32). Misrepresentations about criminal history that would have affected the immigration decision are material misrepresentations under § 1425(a). In Aladekoba, the Court found that the defendant's misstatements about his criminal history were material and that the evidence was sufficient to support the conviction because, "had the INS been aware of a prior arrest for felony drug conspiracy and that Aladekoba misrepresented his first name, that these facts would have been a 'red flag' that would have prevented the grant of naturalization at least until the arrest and falsehoods were satisfactorily explained." Id. In Agunbiade, the Fourth Circuit found that defendant's misstatements that he had never been arrested or deported were material and supported the conviction because "an INS official testified that had Agunbiade disclosed that he had been deported and arrested, the INS would have investigated the circumstances surrounding the arrest, deportation, and reentry [and his] statements therefore could have influenced the INS' decision with regard to his naturalization application." Agunbiade, 172 F.3d at 864. The Government thus demonstrated in the instant case that Plaintiff's undisclosed federal offenses would have influenced INS' decision about his naturalization application and were therefore material.[2] There is no reasonable probability that, if the jury had been instructed on materiality, it would have reached a different verdict under these circumstances. Moreover, Petitioner has not

---

[2] The Government's evidence also established a § 1425(a) violation under the current state of the law. See Maslenjak, 137 S.Ct. at 1929-30 (when relying on an "investigation-based theory," the government must prove: (1) the misrepresented fact was sufficiently relevant to one or another naturalization criterion that it would have prompted reasonable officials, "seeking only evidence concerning citizenship qualifications,' to undertake further investigation;" and (2) the investigation "would predictably have disclosed" some legal disqualification. If so, the defendant's misrepresentations contributed to the citizenship award in the way § 1425(a) requires.).

come forward with any evidence that he could have overcome the Government's proof by demonstrating that he qualified for naturalization notwithstanding his misrepresentations.[3]

Petitioner has failed to demonstrate that trial counsel was deficient or that he suffered any prejudice with regards to the materiality instruction. Therefore, this claim will be denied.

**(2)** **Ineffective Assistance of Appellate Counsel**

Petitioner contends that appellate counsel was ineffective for failing to raise on direct appeal the Court's denial or the materiality instruction and cite the unpublished Fourth Circuit opinions in support of that claim.

There is no reasonable probability that the Fourth Circuit would have reversed and ordered a remand had counsel raised the materiality jury instruction on direct appeal. The Fourth Circuit would have likely concluded that, if any jury instruction error occurred, it was harmless for the reasons set forth in Claim (1), *supra*. As the absence of a materiality instruction had no substantial injurious effect on the verdict, the Fourth Circuit would not have reversed and remanded even if appellate counsel had raised the jury instruction issue on direct appeal. See generally Call v. Branker, 254 Fed. Appx. 257 (4th Cir. 2007) (denying § 2254 claim of ineffective assistance of appellate counsel where the claim at issue would not have likely succeeded if raised as plain error of direct appeal).

Petitioner's claim of ineffective assistance of appellate counsel is, therefore, denied.

**IV.    CONCLUSION**

For the foregoing reasons, the Court denies Petitioner's § 2255 Motion to Vacate.

**IT IS, THEREFORE, ORDERED** that:

---

[3] Maskenjak, 137 S.Ct. at 1930 (even if the Government can make its two-part showing, the defendant may be able to overcome it because qualification for citizenship is a complete defense to a prosecution brought under § 1425(a)).

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: July 16, 2018

Max O. Cogburn Jr.
United States District Judge